[Civ. No. 34747. Second Dist., Div. Three. Apr. 14, 1970.]

DOROTHY T. QUELVOG et al., Plaintiffs and Appellants, v. CITY OF LONG BEACH, Defendant and Respondent.

## COUNSEL

Eric A. Rose, Kenneth A. Davis and John E. Carroll for Plaintiffs and Appellants.

Leonard Putnam, City Attorney, and William E. Emick, Jr., Deputy City Attorney, for Defendant and Respondent.

## OPINION

SHINN, J.*—The present action is by Dorothy T. Quelvog, the surviving wife, and Brian D. Quelvog, only surviving child of Omen C. Quelvog, to recover damages for his death alleged to have been caused by the wrongful conduct of Verna Clarke and the City of Long Beach (City). The court granted the motion of the City for judgment on the pleadings, and plaintiffs appeal from the ensuing judgment. Prior to the granting of the motion one judge had sustained demurrers of the City to the first and second amended complaints, another judge had overruled the demurrer to the third amended complaint, and the City had answered.

The death of Omen occurred in the following manner: He made a business of repairing neon signs; in the afternoon of May 14, 1966, he

---

*Retired Presiding Justice of the Court of Appeal sitting under assignment by the Chairman of the Judicial Council.

placed a ladder with the foot resting upon a public sidewalk of the City and ascended the ladder to a height of 14 feet; he was working on a sign when the defendant Verna Clarke drove her electrically driven autoette along the sidewalk in a negligent manner and against the ladder, knocking it down and causing Omen to fall to the sidewalk and to suffer fatal injuries. Verna Clarke was not entering or leaving adjacent property.

The original complaint stated a single cause of action. It was alleged that for many years the City had encouraged the operation of autoettes upon the sidewalks of the City and had failed and refused to enforce section 21663 of the Vehicle Code which prohibits the operation of motor vehicles upon public sidewalks.

The third amended complaint contains four separately stated causes of action. It was alleged that section 21663 of the Motor Vehicle Code reads as follows: "No person shall operate or move a motor vehicle upon a sidewalk except as may be necessary to enter or leave adjacent property." Ever since the enactment of section 21663 the City has permitted and encouraged the operation of electrically self-propelled autoettes on public sidewalks, has instructed the city police not to interfere with the operation of autoettes on the sidewalks and has refused to permit the city police to enforce section 21663 although the City is under a legislative mandate to enforce the section; this conduct has caused the autoette people to believe they can use the sidewalks. It is alleged that the operation of autoettes upon the sidewalks has caused numerous accidents in which pedestrians have been struck and injured by the autoettes and that the City well knowing of the danger has been indifferent to the demands of the citizens and others that the law be enforced but has actually encouraged the violation in the manner aforesaid.

The second cause of action incorporates the material allegations of the first cause of action but adds no additional facts except allegations that the conduct of the City as described has created and maintained a dangerous and defective condition on the streets of the City and that the death of Omen Quelvog was caused by the concurring negligence of the City and Verna Clarke.

The third cause of action incorporates the material allegations of the first cause of action and characterizes the condition tolerated and encouraged by the City as a public nuisance which proximately contributed to the death of Omen.

It is also alleged that the City has constructed access driveways leading from one sidewalk to another by creating depressions in the curbing at the intersections, suitable for use by autoettes. It was stated in a declaration

of one of plaintiff's attorneys filed in opposition to the motion for judgment on the pleadings that it was stated in depositions of two police officers that in October 1964 the Long Beach Police Department prepared a pamphlet[1] which stated that although autoettes are motor vehicles and must be operated as required by the Vehicle Code, it is permissible to operate them on the city sidewalks. It was also stated in the deposition that a copy of the pamphlet was given to operators of autoettes who requested information concerning the use of the same within the city.

The fourth cause of action incorporates the material allegations of the first cause of action and alleges that in the exercise of its discretionary authority the City decided not to enforce the provisions of section 21663 of the Vehicle Code and that as a result of the exercise of its authority the City created a dangerous condition for the operation of autoettes upon the city streets.

The ground of the court's decision was that the facts stated in the third amended complaint were insufficient to state a cause of action against the City. The law which imposes liability upon public bodies which have property subject to public use is contained in the California Tort Claims Act of 1963 (§ 814 et seq. of the Gov. Code).

---

[1]"PARKING AND DRIVING

"Your electric wheelchair or invalid tricycle is a MOTOR VEHICLE: and, therefore, must be operated according to the laws set forth in the California Vehicle Code.

"To assist you in complying with the law, the following section is quoted from the Calif. Veh. Code:

"Section 22500—'No person shall stop, park, or leave standing any vehicle whether attended or unattended, except when necessary to avoid conflict with other traffic or in compliance with the directions of a peace officer or official control device, in any of the following places:

(f) on a sidewalk.'

"The following section is quoted from the Long Beach Municipal Code:

"Sec. 3410.57—'No operator of any automobile, truck, tractor, motorcycle or power-driven scooter shall drive the same within or on any sidewalk area in the City, except at a permanent or temporary driveway.'

"The above ordinance does NOT name autoettes, electric cars or invalid tricycles; therefore, it is permissible to operate an autoette on the sidewalks in the City of Long Beach; IT IS NOT PERMISSIBLE TO PARK AN AUTOETTE ON A SIDEWALK.

"Your cooperation in complying with these requirements will make our streets and sidewalks safer places for all the people of Long Beach.

"Please make this effort for your community.

"Safety demands that you give the pedestrian the right-of-way as an autoette operator.

"October 1964

"Long Beach Police Department Traffic Division"

Provisions of the code relevant to the facts of the instant case are sections 815, 815.6, 818.2, 830, subdivision (a) and 835 of the Government Code which reads as follows: "§ 815. Except as otherwise provided by statute:

"(a) A public entity is not liable for an injury whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

"(b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

"§ 815.6. Where a public entity is under a mandatory duty imposed by an enactment that is designed to protect again the risk of a particular kind of injury, the public entity is liable for an injury of that kind proximately caused by its failure to discharge the duty unless the public entity establishes that it exercised reasonable diligence to discharge the duty."

"§ 818.2. A public entity is not liable for an injury caused by adopting or failing to adopt an enactment or by failing to enforce any law."

"§ 830. As used in this chapter:

(a) 'Dangerous condition' means a condition of property that creates a substantial (as distinguished from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used."

"§ 835. Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negilgent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

Plaintiffs do not contend that the City was under a mandatory duty (§ 815.6) to prevent the operation of autoettes upon the sidewalks, and they do not contend that the City is liable for mere failure to enforce

existing law. They state the theory of their action as follows: "Appellants are not here concerned with the question, whether defendant city is liable to plaintiffs for its failure to enforce existing law, but whether its *mode of operation* of the public sidewalks of the City of Long Beach created a dangerous condition for persons having a legal right to use said sidewalks, by its failure to warn pedestrians of the fact that motor vehicles were permitted to use such sidewalks *at will* within its boundaries. By permitting motor vehicles to use public sidewalks, by advising autoette drivers that they could operate their vehicles on public sidewalks without fear of criminal prosecution, by constructing special access areas for their vehicles in the curbs of public sidewalks, *and* by failing to warn pedestrians of such use, defendant city created a dangerous condition of public property."

The contention is that the City not only tolerated wholesale violations of section 21663 of the Vehicle Code but aided and encouraged such violations by providing convenient means of access to the sidewalks by autoettes and informing the operators and causing them to believe that the sidewalks could be used by the vehicles without interference by the police. Sufficient facts were alleged to permit plaintiffs to prove, if they could, that the autoettes would not have been operated on the sidewalks if the City had not provided smooth means of entrance and exit and encouraged their use in the manner alleged. The complaint accuses the City of actively aiding and encouraging not only violations of section 21663 but also with violation of its independent duty to pedestrians by creating a dangerous condition of City property with full knowledge that the safety of pedestrians was thereby imperiled.

The City replies to these arguments; no dangerous condition as defined by section 830, subdivision (a) was created or existed; there were no defects in the sidewalks, and the sole cause of the accident was the negligence of Verna Clarke; the City did nothing in violation of its duties except to refrain from enforcing section 21663 of the Vehicle Code, and it incurred no liability for the accidental death of Omen Quelvog by merely failing to enforce that law.

The foregoing are the principal contentions of the parties to be discussed. Other contentions are incidental and not determinative of the single question of the sufficiency of the complaint to state a cause of action against the City.

In its brief the City states its understanding of section 830, subdivision (a) as follows: "The dangerous characteristic has to be inherent in the property involved and not an alleged dangerous or negligent use or utilization of the property by third persons without due care. . . . There are

no allegations that there were irregularities or defects, such as holes, ridges, etc., in the sidewalks."

We discuss three cases cited by the City:

In *Seybert* v. *County of Imperial,* 162 Cal.App.2d 209 [327 P.2d 560], the plaintiff sued the county for injuries suffered when she was struck by a motor boat on a lake owned and operated by the county. The lake was not dangerous in its physical condition or in its intended use. The plaintiff's contention was that the county should have adopted and enforced rules for the regulation of boats on the lake which it had failed to do; the demurrer of the county was sustained, and the judgment in favor of the county was affirmed.

In *Shipley* v. *City of Arroyo Grande,* 92 Cal.App.2d 748 [208 P.2d 51], there was only a low curb which was not adequate as a protection against cars being driven onto the sidewalk. A car jumped the curb and struck the plaintiff. A judgment for the city following the sustaining of its demurrer was affirmed on appeal.

In *Campbell* v. *City of Santa Monica,* 51 Cal.App.2d 626 [125 P.2d 561], the plaintiff was struck by a vehicle being operated upon a public Promenade where its operation was prohibited by law. The appellate court reversed the judgment for plaintiff stating the city's motion for a directed verdict should have been granted.

The decisions in these cases are not helpful as applied to the facts in our case. In none of them did the defendant encourage the use of public property in a manner that would probably imperil the safety of others in their use of it.

■ It is not only structural defects that can create a dangerous condition; it may consist of a condition of property, the use of which in a manner reasonably foreseeable creates a danger of injury.

In *Curreri* v. *City etc. of San Francisco,* 262 Cal.App.2d 603 [69 Cal.Rptr. 20], cars were required to be parked on Greenwich Street at right angles to the curb; the street was steep and a driver would have a tendency to slide away from the driver's seat; the curbs were practically at street level; as Dominico Basili, who was parked in this manner, was driving forward slowly in an effort to make another attempt of clearing the cars parked next to his, his foot slipped from the brake to the accelerator and the car went forward across the sidewalk and struck the plaintiff

who was sitting on the steps of a residence, causing her serious injuries. In a suit against Basili and the city, the city was granted a summary judgment; the judgment was reversed upon the ground that the city could be found guilty of actionable negligence in maintaining a dangerous condition for parking at the location. There are far more potent grounds in our case for reaching the same conclusion with respect to the creation of and maintaining a dangerous condition of city property.

It is alleged in the complaint that ever since section 21663 of the Vehicle Code was enacted autoettes have been knocking down pedestrians on sidewalks, causing severe injury and much litigaton; the city has had knowledge of the occurrence of such accidents but nevertheless has encouraged the continued use of autoettes on the sidewalks.

The City cannot justify its conduct upon the ground that it was the duty of the operators to use the vehicles with due care and not create a dangerous condition on the sidewalks, if, as alleged, it had knowledge of accidents they had caused in the past and it was reasonably foreseeable there would be more smiilar accidents.

The claim of the City of immunity for its conduct is untenable. It is alleged that it did a great deal more than merely failing to enforce the state law. It must be presumed that autoettes would not have been operated on the sidewalks if the City had not flouted the state law and encouraged individuals to disobey it. Clearly it cannot justly claim immunity from the consequences of its alleged conduct by relying upon the fact that it was also failing to enforce state law. Section 818.2 of the Government Code excuses the City for failure to enforce laws that are being violated by others but it does not excuse the City for violating its duty, to avoid the creation of conditions that are dangerous to its citizens or the public generally. The City enjoys no immunity for its alleged affirmative actions and must be held responsible for the consequences of the same. The judgment must be reversed.

It is unnecessary to consider the contention of appellants that the City created and maintained a nuisance upon its streets or failed in its duty in other respects.

We hold that the allegations of the actions of the City in creating and maintaining easy means of access to the sidewalks by autoettes without warning the operators to keep them off the sidewalks and the alleged encouragement of the operators to use them are sufficient to state a cause

of action against the City for creating and maintaining a dangerous condition.

The judgment is reversed.

Schweitzer, Acting P. J., and Allport, J., concurred.

A petition for a rehearing was denied May 8, 1970, and respondent's petition for a hearing by the Supreme Court was denied June 10, 1970. Burke, J., was of the opinion that the petition should be granted.