[Civ. No. 48164. Second Dist., Div. Five. Dec. 29, 1976.]

HERMAN SLAPIN et al., Plaintiffs and Appellants, v.
LOS ANGELES INTERNATIONAL AIRPORT et al.,
Defendants and Respondents.

**COUNSEL**

Ruderman, Levin, Ballin, Plotkin & Graf and Horace A. Ruderman for Plaintiffs and Appellants.

Kirtland & Packard, Alexander B. T. Cobb, Robert E. Moore, Jr., Jacques E. Soiret, Burt Pines, City Attorney, John T. Neville, Assistant City Attorney and Daniel U. Smith, Deputy City Attorney, for Defendants and Respondents.

**OPINION**

ASHBY, J.—Plaintiffs appeal from a judgment of dismissal following the sustaining, without leave to amend, of defendants' demurrer to the first amended complaint. We reverse.

On January 22, 1974, plaintiff Herman Slapin was assaulted and severely injured by unknown persons while he was lawfully on parking lot number four near the American Airlines terminal at Los Angeles International Airport, as a paying patron of the parking lot. He alleged that for some time prior to that date defendants knew that the parking lot was dangerous and unsafe unless properly supervised, maintained, patrolled and protected, and knew that the public relied upon such protection, maintenance and supervision, but defendants "carelessly,

negligently, and improperly owned, operated, managed, maintained, supervised, controlled, lighted and secured said parking area in such a fashion and manner so as to maintain a dangerous condition of property" and that defendants "took inappropriate actions to either warn or protect plaintiff . . . ." Plaintiff Madeline Slapin, his wife, also sued for loss of conjugal society, comfort, affection and companionship.

■ All governmental tort liability is now governed by statute. (Gov. Code, § 815;[1] *Susman* v. *City of Los Angeles,* 269 Cal.App.2d 803, 808 [75 Cal.Rptr. 240].) ■ To the extent that the first amended complaint seeks recovery for failure of the city to provide sufficient patrolling or police protection at the parking lot, it fails to state a cause of action. A public entity is specifically immunized from liability for such failure by Government Code section 845.[2] (*Susman* v. *City of Los Angeles, supra,* at pp. 810-822; *Antique Arts Corp.* v. *City of Torrance,* 39 Cal.App.3d 588, 592-593 [114 Cal.Rptr. 332]; *Hartzler* v. *City of San Jose,* 46 Cal.App.3d 6, 8 [120 Cal.Rptr. 5]; see also Gov. Code, § 818.2.)

■ Plaintiffs contend that this immunity should not apply to a situation where the governmental entity is engaged in a "proprietary" function, i.e., operating a parking lot for paying patrons. This contention is without merit because the former distinction between "proprietary" and "governmental" activities of a public entity (e.g., *Sanders* v. *City of Long Beach,* 54 Cal.App.2d 651, 654 [129 P.2d 511]) was abolished by the statutory scheme enacted in 1963. (*Smith* v. *City of San Jose,* 238 Cal.App.2d 599, 602 [48 Cal.Rptr. 108]; Van Alstyne, Cal. Governmental Tort Liability (Cont. Ed. Bar 1964) § 6.3, pp. 185-186.)

---

[1]Government Code section 815 provides:

"Except as otherwise provided by statute:

"(a) A public entity is not liable for an injury, whether such injury arises out of an act or omission of the public entity or a public employee or any other person.

"(b) The liability of a public entity established by this part (commencing with Section 814) is subject to any immunity of the public entity provided by statute, including this part, and is subject to any defenses that would be available to the public entity if it were a private person."

[2]Government Code section 845 provides: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service."

The Law Revision Commission comment to section 845 states: "This section grants a general immunity for failure to provide police protection or for failure to provide enough police protection. Whether police protection should be provided at all, and the extent to which it should be provided, are political decisions which are committed to the policy-making officials of government. To permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decisions."

■ However, the main thrust of the first amended complaint is that the parking lot, particularly the insufficient lighting provided there, constituted a dangerous condition of property rendering the governmental entity liable under Government Code section 835. A public entity is liable for injury caused by a dangerous condition of its property if (1) the property was in a dangerous condition at the time of the injury; (2) the dangerous condition proximately caused the injury; (3) the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred; and (4) (a) a negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the condition or (b) the public entity had actual or constructive notice of the dangerous condition in time to have taken measures to protect against it. (*Vedder* v. *County of Imperial*, 36 Cal.App.3d 654, 659 [111 Cal.Rptr. 728]; Gov. Code, § 835.)[3] Government Code section 830 provides that "[d]angerous condition" means a condition of property that creates a substantial risk of injury when such property is used with due care in a manner in which it is reasonably foreseeable that it will be used.

As to this aspect of the first amended complaint, the trial court erred in sustaining the demurrer. That a mugger thrives in dark public places is a matter of common knowledge. (See *People* v. *Cacioppo*, 264 Cal.App.2d 392, 397-398 [70 Cal.Rptr. 356]; President's Commission on Law Enforcement and Admin. of Justice, Rep. (1967) The Challenge of Crime in a Free Society, p. 261.) If defendant so poorly lighted the parking lot as to create a substantial risk of muggings, plaintiffs may be able to establish the elements of a cause of action under section 835. We hold that plaintiffs are entitled to attempt to prove (1) that the lighting of the parking lot created a substantial risk of a criminal assault and thus constituted a dangerous condition; (2) that plaintiffs' injuries were proximately caused by the dangerous condition; (3) that the dangerous condition created a reasonably foreseeable risk of the kind of injury plaintiffs sustained; and (4) that defendant had actual or

---

[3]Government Code section 835 provides:

"Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either:

"(a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or

"(b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

constructive notice of the dangerous condition in time to have taken measures to protect against it.

The plaintiff in *Campodonico* v. *State Auto Parks, Inc.,* 10 Cal.App.3d 803 [89 Cal.Rptr. 270], went to trial on a similar theory. She alleged that she suffered a criminal attack in an automobile parking structure which was in a dangerous condition because it was "so constructed and maintained as to encourage therein the presence of persons of degenerate tendencies . . . ." (*Id.,* at p. 805.) On appeal from a jury verdict in favor of the defendant, the judgment was reversed for an error in instructions.

Defendants contend that *Sykes* v. *County of Marin,* 43 Cal.App.3d 158 [117 Cal.Rptr. 466], is controlling and compels affirmance of the judgment herein. To the extent *Sykes* is not distinguishable from the case at bench we decline to follow it. *Sykes* was an affirmance of a judgment of nonsuit granted after the presentation of evidence by the plaintiff. The evidence showed that the plaintiff parked his car at a school parking lot at about 5:30 p.m. in order to pick up his teenage daughter. He parked his car in the only place that was available, some distance away from the buildings in an exceedingly dark unlighted area surrounded by fences and hedges. When he and his daughter returned to the car he was attacked by one or more persons and badly injured. The appellate court upheld the judgment, stating: "In the instant case the harm was caused not by the condition of the parking lot but by the criminal acts of third parties. The fact that the parking area was not lighted is not the kind of dangerous condition contemplated by the Legislature in its legislation concerning defective or dangerous condition of public property. Nor is the legislation designed to protect against activities of third persons on public property who disregard the law. Here the property was neither dangerous nor defective." (*Sykes* v. *County of Marin, supra,* at p. 164.)

In *Sykes,* the plaintiff presented his proof and failed to establish a case. In the instant matter, plaintiffs have not been given the opportunity to put on their proof. No mention is made in the *Sykes* opinion of any previous criminal activity at the school parking lot. Thus the plaintiff there may have been unable to prove that the kind of injury suffered was foreseeable. (See *Rogers* v. *Jones,* 56 Cal.App.3d 346, 351-352 [128 Cal.Rptr. 404].) Here, on the other hand, plaintiffs may be able to establish a history of crime at the parking lot which rendered the injury foreseeable.

The *Sykes* opinion emphasizes that the injury to the plaintiff there was "caused not by the condition of the parking lot but by the criminal acts of third parties." (*Id.,* at p. 164.) The court considered the intentional criminal acts of the assailants to be a superseding intervening cause. (*Id.,* at p. 163.) It must be assumed that the plaintiff's evidence in *Sykes* failed to establish any causal connection between the lack of lighting at the parking lot and the injuries received. ■ We construe *Sykes* in this manner so as to render it consistent with two well-established principles: (1) a governmental entity may be liable for injuries caused by a *combination of* a dangerous condition of public property and the wrongful acts of third parties (*Hayes* v. *State of California,* 11 Cal.3d 469, 472 [113 Cal.Rptr. 599, 521 P.2d 855]; *Baldwin* v. *State of California,* 6 Cal.3d 424, 428, fn. 3 [99 Cal.Rptr. 145, 491 P.2d 1121]; *Vedder* v. *County of Imperial, supra,* 36 Cal.App.3d 654, 660; *Murrell* v. *State of California ex rel. Dept. Pub. Wks.,* 47 Cal.App.3d 264, 267 [120 Cal.Rptr. 812]); and (2) a defendant may not successfully defend that the plaintiff's injuries were caused by the wrongful criminal act of a third party, where the very basis upon which the defendant is claimed to be negligent is that the defendant created a reasonably foreseeable risk of such third party conduct. (*Vesely* v. *Sager,* 5 Cal.3d 153, 164 [95 Cal.Rptr. 623, 486 P.2d 151]; *Campodonico* v. *State Auto Parks, Inc., supra,* 10 Cal.App.3d 803, 807-808; 4 Witkin, Summary of Cal. Law (8th ed. 1974) Torts, § 643, pp. 2922-2923; see *Quelvog* v. *City of Long Beach,* 6 Cal.App.3d 584, 590-592 [86 Cal.Rptr. 127]; see also *Murrell* v. *State of California ex rel. Dept. of Pub. Wks., supra,* 47 Cal.App.3d 264, 271-272, fn. 7.)

It is quite possible, of course, that plaintiffs in this case will also be unable to prove that the lighting of the parking lot was a concurrent proximate cause of their injuries.

Defendants also cite *Hayes* v. *State of California, supra,* 11 Cal.3d 469, in which the state was held not liable for a criminal assault occurring on the beach. *Hayes* is distinguishable because it involved beach property in its natural condition. The court stated: "There is no suggestion in the instant case that a defect in the property itself contributed to the assault." (*Id.,* at p. 472.) The instant case, on the other hand, involves a parking lot maintained by defendants and an alleged specific defect, insufficient lighting, that contributed to the assault.[4]

---

[4]*Hayes* does, however, support defendants as to plaintiffs' reference in the first amended complaint to a failure to warn plaintiffs of the danger. *Hayes* held that the failure to post a warning that the beach was frequented by undesirable persons did not fall within Government Code section 835, since the problem of crime is well known to the public and the warning would be inconsistent with the administrative-legislative determination that the beach should be used by the public. (*Id.,* at pp. 472-473.)

We note that a holding of liability based upon a failure to provide sufficient *lighting* at the parking lot would in no way interfere with the public entity's political discretion as to the amount of *policing* to provide at the parking lot. (See fn. 2, *ante.*)

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

Kaus, P. J., and Hastings, J., concurred.

A petition for a rehearing was denied January 20, 1977, and respondents' petition for a hearing by the Supreme Court was denied February 23, 1977. Clark, J., was of the opinion that the petition should be granted.