[Civ. No. 18317. Third Dist. May 23, 1980.]

JAMES T. STONE et al., Plaintiffs and Appellants, v.
THE STATE OF CALIFORNIA, Defendant and Respondent.

**Counsel**

Weber & Drake and John R. Weber for Plaintiffs and Appellants.

Ericksen, Mackenroth & Arbuthnot, Dennis G. Seley and E. Earl Sechrist III for Defendant and Respondent.

## Opinion

**BLEASE, J.**—Plaintiffs, James T. Stone, Joyce Stone and James Jeffery Stone by his guardian ad litem James T. Stone, appeal from the summary judgment granted in favor of defendant State of California.

We consider and reject plaintiffs' contention that liability for injuries occurring to plaintiffs at the Cal Expo fairgrounds may be predicated on the theory of a dangerous condition of property and hold that the State of California is immune from suit under the provisions of the Government Code precluding liability for failure to provide sufficient police protection service.

I

The facts are established by admissions and by documents submitted in support of the state's motion for summary judgment.[1]

The plaintiffs, together with friends, attended the Cal Expo fairgrounds on September 9, 1975. They agreed to meet at the main gate prior to returning home. Near the gate the plaintiffs were overrun by a gang of youths who were shouting and hitting persons. During the melee Joyce Stone was attacked, her purse was taken and the plaintiffs were beaten and injured.

By amendment to the complaint, the plaintiffs alleged and, by a failure to deny, the defendant admitted, the following: "'At said time and place, defendants, and each of them, so negligently owned, maintained, controlled, managed and operated said premises, and the fixtures and chattels thereon, and so negligently failed to provide adequate security measures as to expose persons on said premises, including the plaintiffs, and each of them, to danger and injury. Defendant, STATE OF CALIFORNIA, prior to September 9, 1975, had made a policy decision not to use State Police for security but to use persons acting in a private capacity

---

[1] Plaintiffs assert that the motion for summary judgment was defective for failure to comply with the notice and affidavit requirements of Code of Civil Procedure section 437c. They also assert other procedural faults. However, as permitted by section 437c, the motion is supported by answers to interrogatories, admissions and depositions. Plaintiffs interposed no objection to the procedure below and point to no issue of triable fact relevant to the resolution of the issue tendered on appeal. Accordingly, the assertions are not well taken.

to provide security, thus assuming a duty to provide security. The persons hired by the State to provide said security failed to use normal care while exercising their functions. [¶] As a direct and proximate result of the negligence of defendants, and each of them, plaintiffs, and each of them, were assaulted, battered and had their personal property converted."

## II

Plaintiffs attempt to establish liability upon the theory that their injuries were caused by a dangerous condition of property, a statutory ground of public entity liability. (Gov. Code, § 835.) They claim that a "governmental entity in possession of and operating property open to the public for business purposes has a duty to restrain the dangerous conduct of third persons or if the dangerous conduct of third persons cannot be adequately controlled then the possessor does have a duty to warn invitees of this danger." The admitted facts show that it is the failure "to provide adequate security measures" at Cal Expo, causing plaintiffs' injuries, which is at issue and that defendant's duty to provide security, if any, arises from the employment of "persons acting in a private capacity to provide security."

Public entity liability for tort rests upon statute and is subject to statutory immunities. (Gov. Code, § 815.) Although plaintiffs do not burden the court with the statutory or case authority, it is apparent that their claims rise or fall upon Government Code section 835.[2]

Government Code section 835[3] makes the state liable for injuries proximately caused by a dangerous condition of property. Section 830[4] defines property as "real or personal property."

---

[2]Since plaintiffs have characterized the security function as performed by "persons acting in a private capacity," it is clear that no general tort liability for the acts of public employees is claimed under Government Code section 815.2.

[3]Government Code section 835 provides: "Except as provided by statute, a public entity is liable for injury caused by a dangerous condition of its property if the plaintiff establishes that the property was in a dangerous condition at the time of the injury, that the injury was proximately caused by the dangerous condition, that the dangerous condition created a reasonably foreseeable risk of the kind of injury which was incurred, and that either: [¶] (a) A negligent or wrongful act or omission of an employee of the public entity within the scope of his employment created the dangerous condition; or [¶] (b) The public entity had actual or constructive notice of the dangerous condition under Section 835.2 a sufficient time prior to the injury to have taken measures to protect against the dangerous condition."

[4]Government Code section 830 defines terms used in section 835:"(a) 'Dangerous condition' means a condition of property that creates a substantial (as distinguished

Plaintiffs mistake the import of Government Code section 835; it provides for public liability only for dangerous conditions of the property itself.

In *Sykes* v. *County of Marin* (1974) 43 Cal.App.3d 158, 161 [117 Cal.Rptr. 466], the court held that the county's failure adequately to light the parking lot of a school did not constitute a dangerous and defective condition of the property and that the harm to plaintiffs was caused by the intervening criminal acts of third parties. (*Id.*, at p. 164.)

In *Slapin* v. *Los Angeles International Airport* (1976) 65 Cal.App.3d 484, 490 [135 Cal.Rptr. 296], the court, faced with similar facts, distinguished *Sykes* as involving a failure to "establish any causal connection between the lack of lighting...and the injuries received." It reversed and remanded for a determination whether the lack of lighting was a concurrent proximate cause, together with the third party conduct, of the injuries.

The plaintiffs show no (concurrent) cause of their injuries rooted in the physical condition of Cal Expo. Rather, their injuries were caused by a negligent failure "to provide adequate security forces."

The facts before us are similar to those in *Hayes* v. *State of California* (1974) 11 Cal.3d 469 [113 Cal.Rptr. 599, 521 P.2d 855], in which two young men were attacked and beaten by unknown persons on a beach on the campus of the University of California at Santa Barbara. The court found that liability for the injury caused by a dangerous condition of the property may be imposed when an ureasonable risk of harm is created by a combination of defect in the property and acts of third parties but that the conduct of third parties is not itself a dangerous condition. (*Id.*, at p. 472.) The court concluded the government had no duty to warn against possible criminal conduct. (*Id.*, at pp. 472-473.)

---

from a minor, trivial or insignificant) risk of injury when such property or adjacent property is used with due care in a manner in which it is reasonably foreseeable that it will be used.

"(b) 'Protect against' includes repairing, remedying or correcting a dangerous condition, providing safeguards against a dangerous condition, or warning of a dangerous condition.

"(c) 'Property of a public entity' and 'public property' mean real or personal property owned or controlled by the public entity, but do not include easements, encroachments and other property that are located on the property of the public entity but are not owned or controlled by the public entity."

Plaintiffs have failed to make a case for liability under Government Code section 835.

### III

Plaintiffs' claims rest exclusively upon a failure to provide sufficient police protection, a failure which has been specifically immunized from liability by Government Code section 845.[5]

"The statutory scheme employed makes it clear that failure to provide adequate police protection will not result in governmental liability (*Susman* v. *City of Los Angeles* (1969) 269 Cal.App.2d 803...), nor will a public entity be liable for failure to arrest a person who is violating the law. (Law Revision comment to § 821; *Tomlinson* v. *Pierce* (1960) 178 Cal.App.2d 112...; *Rubinow* v. *County of San Bernardino* (1959) 169 Cal.App.2d 67....) The statutory scheme shows legislative intent to immunize the police function from tort liability from the inception of its exercise to the point of arrest, regardless of whether the action be labeled 'discretionary' or 'ministerial.'" (*Antique Arts Corp.* v. *City of Torrance* (1974) 39 Cal.App.3d 588, 592-593 [114 Cal.Rptr. 332]; *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6, 8-9 [120 Cal.Rptr. 5]; see *Slapin* v. *Los Angeles International Airport, supra,* 65 Cal.App.3d 484, 487.)[6]

A limited exception to this immunity has been found in cases involving discretionary acts in which a special relationship between the plaintiff and the public employee justified reliance by the plaintiff on the public employee's statement or promise. (*Antique Arts Corp.* v. *City of Torrance, supra,* 39 Cal.App.3d at p. 593; see *Hartzler* v. *City of San Jose, supra,* 46 Cal.App.3d at p. 9.) "The common theme running

---

[5]Government Code section 845 provides: "Neither a public entity nor a public employee is liable for failure to establish a police department or otherwise provide police protection service or, if police protection service is provided, for failure to provide sufficient police protection service." The Law Revision Commission comment to the section provides further explanation of its intent: "This section grants a general immunity for failure to provide enough police protection. Whether police protection should be provided at all, and the extent to which it should be provided, are political decisions which are committed to the policy-making officials of government. To permit review of these decisions by judges and juries would remove the ultimate decision-making authority from those politically responsible for making the decision."

[6]Government Code section 845.8, dealing with liability for injuries caused by prisoners, parolees or arrestees, has been similarly interpreted in *County of Sacramento* v. *Superior Court* (1972) 8 Cal.3d 479, 485 [105 Cal.Rptr. 374, 503 P.2d 1382]. (See *Hartzler* v. *City of San Jose* (1975) 46 Cal.App.3d 6, 9 [120 Cal.Rptr. 5].)

through these decisions is the voluntary assumption by the public entity or official of a duty toward the injured party. Even though there is initially no liability on the part of the government for its acts or omissions, once it undertakes action on behalf of a member of the public, and thereby induces that individual's reliance, it is then held to the same standard of care as a private person or organization." (*Hartzler, supra,* at p. 10.)[7] This court has declined to follow the exception. (*Whitcombe v. County of Yolo* (1977) 73 Cal.App.3d 698 [141 Cal.Rptr. 189].)

Moreover, the exception is not triggered by defendant's decision not to use the California State Police. No duty toward plaintiffs arises by the mere decision to use any particular persons in the performance of the police function. Section 845 immunizes the state from any failure to provide "sufficient police protection service," without regard to the persons performing the service. Since only the *adequacy* of the service has been put in issue by the plaintiffs, section 845 expressly applies to defeat their claims.

## IV

Plaintiffs assert that even if Government Code section 845 does hold defendant immune from tort liability to plaintiffs, the section nonetheless denies them their right to equal protection of the laws.[8]

Although as plaintiffs note no case has held specifically in regard to section 845 that it is constitutional, nonetheless the entire California Tort Claims Act of 1963, which draws similar distinctions between classes of persons throughout, has been held to be constitutional. Thus, we conclude on the strength of these cases that section 845 is constitutional.

In *Datil* v. *City of Los Angeles* (1968) 263 Cal.App.2d 655 [69 Cal.Rptr. 788], the court rejected the plaintiffs' contention that the Tort Claims Act violated due process by granting an immunity from li-

---

[7] Plaintiffs' reliance on *Tarasoff* v. *Regents of the University of California* (1976) 17 Cal.3d 425, 444-447 [131 Cal.Rptr. 14, 551 P.2d 334, 83 A.L.R.3d 1166], is misplaced since that case held that the police defendants had no special relationship with the patient, and were immune for failing to detain him by virtue of Welfare and Institutions Code section 5154. (*Id.*, at pp. 444, 449-459.)

[8] It is necessary to note that we do not in this case deal with a claim that plaintiffs were denied the equal protection of the laws because they were the subject of racial discrimination. They were not denied police protection which was available to persons of another race. (See ten Broek, Equal Under Law (1965 ed.).)

ability for torts to subordinate public entitles, which would result in unequal protection of the laws. The court noted that in all cases which had challenged the act to date, all had upheld its constitutionality. (*Id.*, at pp. 660-661.)

Other cases dealing with procedural requirements of the act have also examined its constitutionality and determined that it does not deny to claimants the equal protection of the laws. (*Roberts* v. *State of California* (1974) 39 Cal.App.3d 844, 848-850 [114 Cal.Rptr. 518]; *Stanley* v. *City and County of San Francisco* (1975) 48 Cal.App.3d 575, 580-582 [121 Cal.Rptr. 842]; see *Whitfield* v. *Roth* (1974) 10 Cal.3d 874, 889, fn. 20 [112 Cal.Rptr. 540, 519 P.2d 588].)

We acknowledge the conviction with which a contrary view is advanced in the dissenting opinion but, despite our colleague's diligence in ferreting out snippets of hope in isolated bits of case language, a substantial equal protection attack upon sovereign immunity has yet to be mounted.

The Tort Claims Act and Government Code section 845 do not deny plaintiffs the equal protection of the laws.

The judgment is affirmed.

Puglia, P. J., concurred.

WATT, J.*—I dissent.

Summary judgment was granted on the ground that defendant was immune under the California Tort Claims Act, Government Code section 845.

Cal Expo can, without distortion of concepts, be described as a "Disneyland" operated by the State of California. There is no serious question but that Disneyland has a duty of reasonable care to prevent assaults on the public by members of the public visiting Disneyland.

If the cause of action here alleged against Cal Expo was realleged against Disneyland, a cause of action would have been stated and the motion for summary judgment would have to have been denied. The

---

*Assigned by the Chairperson of the Judicial Council.

private proprietor of a place of public amusement has a duty to maintain order on his premises and may be held liable for injuries resulting from dangerous activities of third persons, whether such acts are accidental, careless, or intentional, if he does nothing to restrain or control such conduct after he knows, or in the exercise of reasonable care should have known, of it. He must exercise reasonable care to protect patrons from assaults by other patrons if he might reasonably have anticipated such conduct. (4 Am.Jur.2d, Amusements and Exhibitions, §§ 59-60, pp. 179-182; 47 Cal.Jur.2d, Theaters, Shows, Etc., § 19 (Acts of Patrons) pp. 305-306; and *Edwards* v. *Hollywood Canteen* (1946) 27 Cal.2d 802 [167 P.2d 729], wherein the court said: "[I]t is clear that the occupier is under a duty to protect visitors such as plaintiff by taking appropriate measures to restrain conduct by third persons which he should be aware of and which he should realize is dangerous." (*Id.*, at p. 810.))

To say that the state, in the operation of Cal Expo, does not have an equal responsibility to the public visiting Cal Expo is to say that, *in fact*, a visitor to Cal Expo is denied equal protection of the laws.

Are we going to say, despite the clear language of the Constitution that "no state shall deny any person...equal protection under the laws," that this court must recognize a constitutionally permissible denial of equal protection of the laws? Is not a constitutionally permissible denial of equal protection of the laws a contradiction in terms?

If there is to be a different standard for the government than for private entities, which should set the example?

The argument for a lower standard for the government is frequently urged on the basis of what is quaintly termed "sovereign" immunity. In this nation of a free people is it appropriate to use the term "sovereign" as to the government? While it may well be appropriate to use the term "sovereign" with respect to one government in its relationship to another government, in this nation it is the people who are sovereign and the government is but the agent of the sovereign people. Is it not incongruous to say that the agent can create for itself "sovereign immunity" from its masters—the people?

Nineteen years ago, in *Muskopf* v. *Corning Hospital Dist.* (1961) 55 Cal.2d 211 [11 Cal.Rptr. 89, 359 P.2d 457], Justice Traynor wrote: "The rule of governmental immunity for tort is an anachronism, with-

out rational basis . . . ." (*Id.*, at p. 216.) The passing of a statute has not made what was irrational rational. The California Tort Claims Act *in fact* legislates unequal protection. The little children who visit Cal Expo are entitled to protection of the laws equal to the little children who visit Disneyland.

On the issue of whether the California Tort Claims Act, Government Code section 810 et seq., is unconstitutional as a denial of equal protection of the laws, the discussion by Justice Tobriner in *Brown* v. *Merlo* (1973) 8 Cal.3d 855, 881-882 [106 Cal.Rptr. 388, 506 P.2d 212, 66 A.L.R.3d 505], is thought provoking, particularly where he wrote: "Although the *Muskopf* decision itself did not rest on constitutional grounds, because the governmental immunity doctrine at issue was of judicial rather than legislative creation, the opinion's reasoning—relying on the unequal treatment afforded similarly situated persons—parallels the constitutional principle embodied in our state and federal equal protection clauses." (*Id.*, at p. 881.) Then, in discussing the Illinois Supreme Court case of *Harvey* v. *Clyde Park District* (1965) 32 Ill.2d 60 [203 N.E.2d 573], Justice Tobriner said: "The Illinois Supreme Court, testing the governmental immunity statutory scheme against the requirements of a state constitutional 'equal protection' provision similar to the applicable California provision, found the challenged statutory pattern unconstitutional on grounds equivalent to those underlying the *Muskopf* decision." (Fn. omitted.) (*Brown* v. *Merlo, supra*, at pp. 881-882.)

No California case has discussed the question of whether Government Code section 845 is unconstitutional as a denial of equal protection of the laws. There are a few cases which assume without analysis that the California Tort Claims Act is constitutional with the exception of *Flournoy* v. *State of California* (1964) 230 Cal.App.2d 520 [41 Cal.Rptr. 190], in which the equal protection point was discussed rather fully and its constitutionality upheld. The persuasiveness of *Flournoy*, however, is substantially diminished because of its pointed and heavy reliance on *Ferreira* v. *Barham* (1964) 230 Cal.App.2d 128 [40 Cal.Rptr. 739], which is referred to in *Flournoy* three times (pp. 523, 524 and 535) with clear approval. *Ferreira* was the guest statute case which was so clearly overruled by *Brown* v. *Merlo, supra*, albeit sub silentio. As to equal protection of the laws, the rationale of *Flournoy* is the rationale of *Ferreira*, and the rationale of *Ferreira* was rejected in *Brown*, wherein the Supreme Court ended its opinion by saying: "We have concluded that such irrational discrimination cannot be

squared with the applicable constitutional standards." (*Brown* v. *Merlo*, *supra*, 8 Cal.3d at p. 883.)

Repeatedly it has been held that a case is not authority for a point not discussed. Should a case be deemed authority after its rationale has been specifically rejected by the Supreme Court? The answer must be no.

I therefore am of the opinion that Government Code section 845, purporting to create an immunity for public entities and public employees with respect to failure to establish a police department, or to provide police protection, or to provide sufficient police protection service is unconstitutional as a denial of equal protection of the laws under the state and federal Constitutions. Liability or nonliability with respect to such matters should turn, not on any concept of immunity, but on basic concepts of doing, or failing to do, what a reasonable person would or would not do under the same or similar circumstances and on basic concepts of legal causation.

While ruling that Government Code section 845 is unconstitutional, I am of the opinion that even if that statute were deemed constitutional the motion for summary judgment should have been denied. As we have earlier pointed out, if a private entity was operating Cal Expo, summary judgment would have to be denied under the facts presented in this case.

There are three cases which indicate that immunity, if recognized under Government Code sections 818.2, 820.2, 821, 845 or 845.8, is to be narrowly restricted, that discretionary immunity applies only to carefully balanced basic policy decision or planning as opposed to operational decision, that Government Code section 845 is meant to apply only to police protection in the sense of protection against crime as distinguished from protection against negligence in a particular situation, and that if liabilities imposed by legislation outside the Tort Claims Act serve a purpose that is frustrated by an immunity under the Tort Claims Act the statutory liabilities must prevail.

In *Mann* v. *State of California* (1977) 70 Cal.App.3d 773 [139 Cal.Rptr. 82], a directed verdict in favor of the state was reversed where a highway patrol officer, after assisting the occupants of two stalled cars on a freeway left the scene without advising those present that he was leaving and without putting out flares or waiting for a tow

truck to assume a protective position with its amber flashing light. The stranded people were injured by another passing motorist. The state urged discretionary immunity under Government Code section 820.2 and police protection immunity under Government Code section 845. The court held that discretionary immunity did not apply because negligence in the ministerial performance of investigation was beyond the protection of the statutory discretionary immunity, and "[t]his is not the type of failure of police protection that section 845 was intended to immunize." (*Id.*, at p. 778.) Similarly, we say that failure of protection for the public called for at an amusement park such as Cal Expo "is not the type of failure of police protection that section 845 was intended to immunize." (*Ibid.*)

In *Duarte* v. *City of San Jose* (1979) 100 Cal.App.3d 648 [161 Cal.Rptr. 140], a summary judgment in favor of the city was reversed in a holding that even though Government Code section 845.8 immunized the city and police officers who left an arrested drunk driver in their police car with the keys in it and the motor running, with the "surprising" result that the drunk drove away in the police car with the officers in hot pursuit until the inevitable happened—the drunk driving the police car struck and seriously injured Duarte while he was mowing his front lawn—nevertheless, the city was liable to Duarte for negligence of its police officers in the operation of a motor vehicle in violation of Vehicle Code section 17001. The court said: "The second approach and the one which we apply in this case, is to consider whether the liabilities imposed by legislation outside the 1963 act serve a purpose that is frustrated by an immunity under the act. If so, Van Alstyne suggests, and we agree, that it is reasonable to conclude that the statutory liabilities must prevail." (*Id.*, at p. 656.)

The most recent case of *Clemente* v. *State of California* (1980) 101 Cal.App.3d 374 [161 Cal.Rptr. 799], involved the reversal of a demurrer sustained without leave to amend in a case in which a highway patrol officer failed to get the name of a motorcyclist who had injured a pedestrian. The trial court ruled that the state was immune as the negligence was merely a failure to enforce a law and, as such, was immune under Government Code sections 818.2 and 821. The Court of Appeal said that while broadly speaking an investigation by a highway patrol officer of a traffic accident is a law enforcement activity, such activity does not constitute law enforcement within the meaning of the Government Tort Liability Act. "This narrow interpretation of the scope of the failure to enforce a law immunity...is consistent with the restricted

scope of the discretionary immunity (Gov. Code, § 820.2)...our Supreme Court enunciated in *Johnson v. State of California* (1968) 69 Cal.App.2d 782, 793-800...and with that this panel gave to the lack of police protection immunity (Gov. Code, § 845) in *Mann v. State of California* (1977) 70 Cal.App.3d 773, 778-779...." (*Id.*, at p. 378.) The court further said that what was involved was negligence in the conduct of a discretionary investigation and that: "Neither the discretionary immunity of Government Code section 820.2, nor the more specific discretionary immunity of failure to enforce a statute (Gov. Code, §§ 821, 818.2) immunizes the officer and the state from the legal consequences of this negligence....Government, through its agents, is held to the same standard of care the law requires of private citizens in the performance of duties imposed or assumed. (See *Sava v. Fuller* (1967) 249 Cal.App.2d 281, 290....)" (*Id.*, at p. 379.)

In the case at bar the state made a policy decision not to use state police for security at Cal Expo, but instead to use a private security patrol which, plaintiffs assert, failed to use reasonable care in exercising their responsibilities. Under the case law the state cannot escape liability if the facts are sufficient to convince a jury that the private security patrol failed to exercise reasonable care and that such failure was a legal cause of injuries to plaintiffs.

I would reverse the judgment and remand the case to the trial court for further proceedings consistent with this dissenting opinion.

A petition for a rehearing was denied June 16, 1980, and appellants' petition for a hearing by the Supreme Court was denied July 30, 1980.